**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **DIONDRE D. ROMERO** | : | **DOCKET NO. 16-cv-120** |
| **D.O.C. # 552062** | | |
| | | |
| **VERSUS** | : | **CHIEF JUDGE DRELL** |
| | | |
| **DARRYL VANNOY ET AL.** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a pro se application for a writ of habeas corpus pursuant to 28 U.S.C § 2254, filed by Diondre D. Romero ("petitioner") [doc. 1]. The petitioner is a prisoner in the custody of the Louisiana Department of Public Safety and Corrections. He is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Darryl Vannoy, warden, opposes the application. Doc. 11.

This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court. For the following reasons **IT IS RECOMMEDED** that the application be **DENIED** and that the petition be **DISMISSED WITH PREJUDICE**.

**I.**
**BACKGROUND**

*A. Conviction*

The petitioner was indicted on six counts of aggravated rape on September 2, 2009, in the Fifteen Judicial District, Vermilion Parish, Louisiana. Doc. 18, att. 5, pp. 14–15. The charges related to the rape in April and May of 2009 of L.T., a child formerly in the petitioner's care. *State*

*v. Romero*, 2012 WL 4794633 (La. Ct. App. 3d Cir. Oct. 3, 2012) (unpublished). At the time of the offenses, L.T. was nine years old. *Id.* at *2.

Following a bench trial, the petitioner was convicted as charged on July 19, 2011. Doc. 18, att. 5, p. 12. On October 27, 2011, he was sentenced on each count to a term of life imprisonment without benefit of probation, parole, or suspension of sentence, with the terms to run concurrently to each other. *Id.* at 13.

### B. Direct Appeal

The petitioner appealed his conviction to the Louisiana Third Circuit Court of Appeal, asserting the following assignments of error:

1. The evidence was insufficient to support the convictions due to internal inconsistencies in the victim's testimony and conflict with other testimony presented at trial, and the physical evidence was inconclusive as to the occurrence of rape.
2. Dr. Hutchinson's testimony and the absence of any bruising, tearing, et cetera, combined with internal inconsistencies in the victim's testimony, undermine the convictions in this case.
3. The petitioner was given incorrect information concerning the time limitation for filing an application of post-conviction relief.

*Romero*, 2012 WL 4794633 at *1–*8. The Third Circuit reviewed all claims on the merits, denying the first two and affirming the conviction but agreeing as to the third and ordering the trial court to provide the petitioner with written notice of his filing deadlines within ten days of the opinion's rendition. *Id.* at *1–*9. The petitioner then sought review in the Louisiana Supreme Court, which denied same on May 17, 2013. *State ex rel. Romero v. State*, 117 So.3d 919 (La. 2013). He did not file a petition for certiorari in the United States Supreme Court. Doc. 1, p. 2.

### C. State Collateral Review

The petitioner next filed an application for post-conviction relief in the trial court on February 24, 2014. Doc. 21, att. 12, pp. 1–49. There he raised the following claims:

1. The petitioner's right to a fair trial was violated when the prosecutor elicited false testimony from the victim and allowed the victim to give false answers to questions posed by defense counsel.

2. The petitioner's right to counsel and right to present evidence in his defense were violated by the following:

   a. Trial counsel's failure to request a mistrial after the prosecutor misled defense counsel and the court during opening statement.
   b. Trial counsel failed to properly utilize the victim's prior inconsistent statements to impeach her credibility.
   c. Trial counsel failed to obtain exculpatory documents from the Office of Community Services regarding an investigation that involved routine visits with the victim and her siblings in March and April of 2009.
   d. Trial counsel failed to call witnesses to testify at trial who were present during the time of the alleged offense and who would have testified that the rapes could not have occurred without their knowledge.
   e. Trial counsel refused to permit the petitioner to testify in his own defense.

3. The petitioner was deprived of his right to a fair trial based on the accumulation of errors committed at trial.

*Id.* We cannot locate the trial court's ruling on that claim in the record; however, the petitioner sought review in the Third Circuit, which denied writs after finding "no error in the trial court's denial" of the application. Doc. 17, att. 1, p. 43. The petitioner then sought review in the Louisiana Supreme Court, which denied same on July 31, 2015. Doc. 17, att. 2, p. 2.

### D. Federal Habeas Petition

The instant petition was filed on January 19, 2016.[1] Doc. 1, p. 10. Here the petitioner renews the insufficient evidence claim from his direct appeal and all claims from his application for post-conviction relief.

---

[1] The petitioner indicates that he placed the petition in the prison mailing system on January 19, **2015**. Doc. 1, p. 10. However, as stated above, post-conviction review was completed at the state level on July 31, 2015, and the instant petition was received by this court on January 26, 2016. *See id.* at 1. Therefore we view the date of mailing as an obvious error.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

### A.  *Timeliness*

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek habeas review in federal court. 28 U.S.C. § 2244(d)(1). This period generally runs from the date that the conviction becomes final. 28 U.S.C. § 2244(d)(1)(A). The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit. 28 U.S.C. § 2244(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999). However, any lapse of time before proper filing in state court *is* counted. *Flanagan v. Johnson*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998).

A state application is considered pending both while it is in state court for review and also during intervals between a state court's disposition and the petitioner's timely filing for review at the next level of state consideration. *Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001). The limitations period is not tolled, however, for the period between the completion of state review and the filing of the federal habeas application. *Rhines v. Weber*, 125 S.Ct. 1528 (2005). Accordingly, in order to determine whether a habeas petition is time-barred under the provisions of §2244(d) the court must ascertain: (1) the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review, (2) the dates during which properly filed petitions for post-conviction or other collateral review were pending in the state courts, and (3) the date upon which the petitioner filed his federal habeas corpus petition.

### B.  *Procedural Default and Exhaustion of State Court Remedies*

Before proceeding to the merits of the issues raised in the petition, this court considers the doctrines of procedural default and exhaustion of state court remedies. Exhaustion and procedural

default are both affirmative defenses that may be waived by the state if not raised in its responsive pleadings. *See, e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994). However, the federal district court may also consider both doctrines on its own motion. *Magouirk v. Phillips*, 144 F.3d 348, 357–59 (5th Cir. 1998). Therefore we consider any claims by respondent under these doctrines, in addition to conducting our own review.

### 1. *Exhaustion of State Court Remedies*

The federal habeas corpus statute and decades of federal jurisprudence require a petitioner seeking federal habeas corpus relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *e.g.*, *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir. 1998). This is a matter of comity. *Ex parte Royall*, 6 S.Ct. 734, 740–41 (1886). In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts "in a procedurally proper manner according to the rules of the state courts." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). Each claim must be presented to the state's highest court, even when review by that court is discretionary. *E.g.*, *Wilson v. Foti*, 832 F.2d 891, 893–94 (5th Cir. 1987). Exhaustion is not satisfied if the petitioner presents new legal theories or entirely new factual claims in support of his federal habeas petition. *Brown v. Estelle*, 701 F.2d 494, 495 (5th Cir. 1983).

In Louisiana the highest court is the Louisiana Supreme Court. *See* LSA–Const. art. 5, § 5(a). Thus, in order for a Louisiana prisoner to have exhausted his state court remedies he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner, supported by the legal theories and factual allegations that he raises now. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997).

### 2. Procedural Default

When a petitioner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, he may not raise that claim in a federal habeas proceeding absent a showing of cause and prejudice or actual innocence. *Coleman v. Thompson*, 111 S.Ct. 2546, 2554 (1991). Failure to satisfy state procedural requirements results in forfeiture of a petitioner's right to present a claim in a federal habeas proceeding. *Murray v. Carrier*, 106 S.Ct. 2639 (1986). This is not a jurisdictional matter; rather, it is grounded in concerns of comity and federalism. *Trest v. Cain*, 118 S.Ct. 478, 480 (1997).

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default)[2] or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred ("technical" procedural default). In either instance, the petitioner is considered to have forfeited his federal habeas claims. *Bledsue v. Johnson*, 188 F.3d 250, 254–5 (5th Cir. 1999). The grounds for traditional procedural default must be based on the actions of the last state court rendering a judgment. *Harris v. Reed*, 109 S.Ct. 1038, 1043 (1989).

### C. General Principles

When a state court adjudicates a petitioner's claim on the merits, this court reviews the ruling under the deferential standard of 28 U.S.C. § 2254(d). *Corwin v. Johnson*, 150 F.3d 456,

---

[2] To serve as adequate grounds for a federally cognizable default the state rule "must have been firmly established and regularly followed by the time as of which it is to be applied." *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (internal quotations omitted).

471 (5th Cir. 1998). Section 2254(d) provides that a writ of habeas corpus shall not be granted unless the state court's adjudication on the merits resulted in a decision that was either (1) contrary to clearly established federal law or involved an unreasonable application of that law, or (2) based on an unreasonable determination of the facts in light of the evidence before the state court. 28 U.S.C. § 2254(d).

The first standard, whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law, applies to questions of law as well as mixed questions of law and fact. A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard. *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (per curiam). Furthermore, the decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary] result . . . ." *Bell v. Cone*, 125 S.Ct. 847, 851 (2005) (quotations and citations omitted).

The second standard – whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence – applies to questions of fact. It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable, a "substantially higher threshold." *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S.Ct. 841, 849 (2010). Rather, the

petitioner has to show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable. *Rice v. Collins*, 126 S.Ct. 969, 975 (2006).

### III.
### LEGAL ANALYSIS

As a preliminary matter this court reviews the petitioner's application for timeliness, failure to exhaust state court remedies, and procedural default. If the claim is procedurally viable, its merits are considered under the general standards set forth in Section II.C.

#### A. *Timeliness*

Here the Louisiana Supreme Court denied review of the petitioner's direct appeal on May 17, 2013. The petitioner's conviction and sentence became final on August 16, 2013, when his time for seeking review in the United States Supreme Court expired. *See* Sup. Ct. R. 13. Thus **192 days** accrued before he filed his application for post-conviction relief in the trial court on February 24, 2014. The one-year limit under § 2244(d) was tolled until the Louisiana Supreme Court denied his writ application on July 31, 2015, allowing an additional **172 days** to accrue before the instant petition was filed. Accordingly, **364 days** are counted against the one-year limit and this petition is timely.

#### B. *Exhaustion of State Court Remedies and Procedural Default*

All of the claims raised here were exhausted in the state courts, and there is no indication that any was denied on a procedural basis. Accordingly, there appears to be no basis for procedural default of any claim and all claims raised in the petition will be considered below.

### C. *Substantive Analysis*

#### 1. *Insufficient Evidence*

A defendant's constitutional right to due process is violated when he is convicted of a crime without the state having met its burden of proof on every element of the offense.[3] *Jackson v. Virginia*, 99 S.Ct. 2781, 2787 (1979) (citing *In re Winship*, 90 S.Ct. 1068, 1073 (1970)). Such claims are decided by determining whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Donahue v. Cain*, 231 F.3d 1000, 1004 (5th Cir. 2000) (internal quotations omitted). In other words, "[a]ll credibility choices and conflicting inferences are to be resolved in favor of the verdict." *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999). This court must also defer to the trial court's findings on issues of conflicting testimony and the weight of the evidence. *Jackson*, 99 S.Ct. at 2789. Thus, under the standards of *Jackson* and § 2254(d), this court's review on sufficiency of evidence claims is "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012).

The petitioner was convicted of aggravated rape. Aggravated rape was defined under Louisiana law in pertinent part as "where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim" under certain enumerated circumstances, including "[w]hen the victim is under the age of thirteen years."[4] LA. REV. STAT. § 14:42(A)(4). The age of the victim is not in dispute. Instead, the petitioner contends that the evidence was insufficient due

---

[3] On federal habeas review, a court defers to the substantive elements of the offense as defined by state law. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)).

[4] The statute has since been amended to rename the offense as "first degree rape," though the elements of the offense remain the same. *See* LA. REV. STAT. § 14:42(A); LA. ACTS 2015, No. 256, § 1.

to internal inconsistencies in her testimony and conflicts between her testimony and other evidence, as well as a lack of physical evidence.

In Louisiana, testimony of the victim alone is sufficient to establish the elements of a sexual offense. *State v. Schexnaider*, 852 So.2d 450, 457 (La. Ct. App. 3d Cir. 2003). Furthermore, "[t]he credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness." *Id.* (quoting *State v. Willis*, 915 So.2d 365, 378–79 (La. Ct. App. 3d Cir. 2005)) (internal quotations and alterations omitted).

The victim testified at trial and described some of the attacks in detail, including the rooms where they occurred and what she did afterward. Doc. 18, att. 6, pp. 6–12. She was adamant that the petitioner had raped her six times and that she could remember each incident. *Id.* at 9. At trial she stated that she bled after the first attack. *Id.* at 8. However, when she first reported the incident to her grandmother she stated that she hadn't bled but had had other discharge. *Id.* at 25–26. The report from her physical examination on June 18, 2009, indicated that the last attack was Wednesday, May 13, 2009. *Id.* at 39. However, according to the victim's mother, the victim and petitioner were not alone together from the preceding Friday onward and the victim was staying with either the petitioner's mother or the victim's grandmother. *Id.* at 48–51. There were inconsistencies between the victim's statements to OCS, her grandmother, and the children's advocacy center, taken a week apart, as to whether she was raped while her mother was in rehab during a six to seven day period in April (as she apparently told the OCS worker) and/or while her mother was at work (as her grandmother recalled and the children's advocacy center interview reflected). *See Romero*, 2012 WL 4794633 at *6–*7; doc. 18, att. 6, pp. 22, 66–67. The OCS worker also reported that the victim had stated that the petitioner had raped her "right before OCS took [the children]." Doc. 18, att. 6, p. 67. At trial the victim denied having told anyone that the

rapes only occurred over a six to seven day period or that the petitioner had raped her just before OCS removed the children from the home.[5] Doc. 18, att. 6, pp. 14–15. Finally, the victim stated at trial that she preferred to used one term for her vagina, but apparently used a different term in her children's advocacy center interview two years earlier. Doc. 18, att. 6, p. 8; *Romero*, 2012 WL 4794633 at *6.

As for the physical evidence, Dr. Myriam Hutchinson testified that she examined the victim on June 18, 2009, and found that her hymen was not present. Doc. 18, att. 6, pp. 34–37. She stated that this finding was consistent with sexual abuse but could also be the result of malformation or other injury. *Id.* at 36–38. Finally, her report indicated that the last possible date of attack was May 13, 2009. *Id.* at 39. Accordingly, she did not find the absence of bruises, tearing, or bleeding over a month later to be unusual. *Id.* at 38–41.

The Third Circuit reviewed all of these inconsistencies, together with the absence of conclusive physical evidence, and still found that the evidence was sufficient to support the conviction. *Romero*, 2012 WL 4794633 at *1–*8. We find no error to this ruling. The alleged inconsistency relating to terminology has minimal persuasive value.[6] The date of the last possible

---

[5] The petitioner also points to the fact that McConnell's interview summary shows that the victim stated that on one occasion she had locked a door to keep the petitioner from getting to her, but that he had kicked it in. Doc. 21, att. 12, p. 86. At trial the victim denied ever stating that the petitioner had kicked a door in. Doc. 18, att. 6, p. 15. However, McConnell did not testify to that statement and it does not appear that her interview notes were introduced at trial. *See* doc. 18, att. 5, p. 95 (trial index); doc. 18, att. 6, pp. 66–68 (McConnell testimony). Accordingly, this inconsistency was not demonstrated at trial and so is outside the scope of the sufficiency of evidence claim, which relates to "record evidence adduced at trial." *E.g.*, *West v. Johnson*, 92 F.3d 1385, 1393 (5th Cir. 1996) (quoting *Jackson*, 99 S.Ct. at 2791–92)).

[6] The petitioner contends that, at trial, the victim denied having ever used the earlier term. The exchange relating to preferred terms was as follows:

        Q. What do you usually call your vagina?
        . . . .
        Q. **Do** you ever say the word flower?
        A. Huh-uh ("No").

Doc. 18, att. 6, p. 8 (emphasis added). The prosecutor used the present tense. Accordingly, the victim's response cannot be taken as a denial that she had ever used that term and should instead most fairly be read as a denial that, under all circumstances at the present time, she did not.

attack appears to reflect only when the victim was removed from her mother's custody rather than any independent recollection by the victim, and the statement related by the OCS worker that the rapes occurred just before the removal does not reflect that it happened on the same day. The petitioner shows that the victim only reported on one occasion that the rapes occurred when her mother was in rehab, while she maintained at trial, to her grandmother, and in the children's advocacy center interview that they occurred while her mother was at work.

Mindful of the victim's age at the time of the offenses, as well as the amount of time that passed between the rapes and the trial, we find that the inconsistencies noted by petitioner are too insignificant to undermine our obligation to resolve credibility choices in favor of the verdict. Accordingly, the evidence, viewed in a light most favorable to the prosecution, was more than sufficient to support the conviction. The petitioner therefore shows no error in the state court's ruling and no right to federal habeas relief under this claim.

### 2.  *False Testimony*

The petitioner next alleges that his constitutional rights were violated when the prosecutor knowingly elicited false testimony from the victim and failed to object when she lied in response to questions asked by the defense.

Due process is violated, and the defendant is entitled to a new trial, when the state obtains a conviction by using material evidence, including testimony, that it knows to be false. *Giglio v. United States*, 92 S.Ct. 763, 766 (1972); *Napue v. Illinois*, 79 S.Ct. 1173, 1177–79 (1959). This rule applies whether the state solicits the false evidence or allows it to go uncorrected when it appears. *Napue*, 79 S.Ct. at 1177. It also extends to evidence going to the credibility of a witness where the witness's testimony is material to the case. *Giglio*, 92 S.Ct. at 766.

The petitioner alleges the following incidents of false testimony: 1) the victim's denial that she ever used the terminology for her vagina used in the children's advocacy center video and the fact that the victim used more sophisticated words in her trial testimony than she had in her children's advocacy center video, 2) the victim's denial of having told the OCS worker that the rapes occurred only over a six to seven day period and that the petitioner had kicked down a locked door, and 3) the victim's denial that she had ever told anyone that the last attack occurred on May 13, 2009.

The first incident petitioner complains of does not show any instance of false testimony. The victim did not deny having ever used the term for her vagina used in the video interview from two years earlier but instead stated that she did not "now" use that term and would prefer to use another term. Doc. 18, att. 6, p. 8; *see* note 6, *supra*. The petitioner contends that the victim's use of other words, such as "cosmetologist," "sexually abused," and "exotic dancer" show that she was coached by the prosecution to appear more persuasive, as she had used more juvenile terms during interviews two years earlier. However, changes in the child victim's vocabulary over a two year period are insufficient support for a claim that her testimony was impermissibly coached.

As for the victim's denial of her prior inconsistent statements, these do not rise to the level of a *Napue* violation because they are not sufficiently material. "[It] is the prerogative of defense counsel to plan his or her cross-examination strategy, and undue clarification or interruption by the prosecution might interfere with that strategy." *United States v. O'Keefe*, 128 F.3d 885, 894 (5th Cir. 1997). The victim's inconsistent statements were specifically elicited by the defense, presumably to impeach the victim at a later point. Doc. 18, att. 6, pp. 14–15. The defense did so with respect to the dates/timeframe statements with the testimony of Katie McConnell. *Id.* at 66–68. Its failure to use McConnell or her interview notes to impeach the victim's statement about

never saying that the petitioner had kicked in a door appears to be an oversight on the part of defense counsel. *See* note 5 *supra*. Accordingly, the petitioner shows no error to the state court's ruling and no right to habeas relief under this claim.

### 3. *Ineffective Assistance*

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and (2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial or of a dependable verdict. *Id.* at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id.* Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (quoting *Strickland*, 104 S.Ct. at 1065). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055–56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (quoting *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011)). "Both of [Strickland's] prongs must be proven, and the failure to prove one of them will

defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566–67 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1735, 191 L. Ed. 2d 706 (2015).

Here the petitioner claims ineffective assistance based on several alleged deficiencies by trail counsel. We review each one under the standard above. We also examine the cumulative effect of all instances of deficient performance in order to see if they amount to adequate prejudice under *Strickland*. *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009).

### a.   Failure to request mistrial

The petitioner first contends that the prosecutor misled the court and defense as to which witnesses she would call and what they would testify to during her opening argument, and that trial counsel's failure to request a mistrial on this basis amounted to deficient performance. Thus the success of the ineffective assistance claim depends on the merits of the unraised objection and likelihood of relief being granted. As the Fifth Circuit notes, "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 9 F.3d 959, 966 (5th Cir. 1994).

Louisiana law establishes the scope of the state's opening statement as "explain[ing] the nature of the charge, and set[ting] forth, in general terms, the nature of the evidence by which the state expects to prove the charge." LA. C. CR. P. art. 766. However, the opening statement is not evidence and has no probative force. *State v. Green*, 343 So.2d 149, 151 (La. 1977). "Therefore, because proof frequently falls short of professional expectations, misstatements of the evidence or references to evidence later ruled inadmissible in opening remarks generally does not serve as a ground for a mistrial absent bad faith on the part of the prosecutor or clear and substantial prejudice." *State v. Camper*, 996 So.2d 571, 578 (La. Ct. App. 4th Cir. 2008) (citing *Green*, 343 So.2d at 151).

The petitioner alleges that the prosecutor misled the court by stating that she would call the victim's sister, D.T., as a witness, and that the victim's mother would testify that she left the victim alone with the petitioner while she served a jail sentence in May 2009.[7] However, D.T. never appeared as a witness. *See* doc. 18, att. 5, p. 95 (index of trial proceedings); *id.* at 12 (minutes). T.T. was called by the state. Doc. 18, att. 6, p. 43. She stated that she was incarcerated for the first time on May 13, 2009, and that at that time her living situation with the petitioner came to an end. *Id.* at 44–45. Thus, the petitioner contends, although the prosecutor reiterated at closing that the petitioner had "ample opportunity [to commit the rapes] because he was left alone with this child," the opening statement was substantially prejudicial and intentionally misleading because the prosecutor never produced proof of such opportunity. *Id.* at 73.

In this instance, it is the petitioner who is attempting to mislead. Although the prosecution ultimately did not call D.T. as a witness and although T.T. did not testify that the victim was in the petitioner's care during her incarceration, there was more than enough testimony that the petitioner had adequate opportunity to assault the victim. T.T. stated that she regularly left the petitioner alone with her children while she was working.[8] *Id.* at 44–45. The victim likewise testified that the rapes occurred while she was in the home with the petitioner, stating specifically that her mother was at work on one occasion and that there were generally no other adults in the house when the petitioner assaulted her. *Id.* at 7–12. She also stated that her mother did not notice details, such as

---

[7] Specifically, the prosecutor stated:

> [T.T.] is the mother of the child. She is expected to testify that she left the victim alone with Mr. Romero while she worked at a local club here in Abbeville and also while she served a jail sentence in May of 2009.
>
> And, finally, we have [D.T.], who is the sister of the victim . . . and she will testify that there were times where Mr. Romero made the children go to the park and leave the residence while he himself was alone with [L.T.].

Doc. 18, att. 5, p. 100; doc. 18, att. 6, p. 1.

[8] She also testified that she had been away at a rehab facility in late April or early May, but did not state who had been looking after her children at that point. Doc. 18, att. 6, pp. 45–46.

why she was wearing a jacket to cover her bruises, because "she was too full of drugs" and "didn't have her right mind at the time." *Id.* at 17. The victim's grandmother, G.T., described how the victim had initially disclosed the abuse. *Id.* at 20–22. G.T. stated that the victim had reported that her mother was at work when the rapes occurred. *Id.* at 22.

There is no basis for finding substantial prejudice or an intent to mislead from the prosecutor's opening statements based on the above. Although the exact proof described in opening statement was not elicited at trial, the state still showed through other means and other occasions that the petitioner had ample opportunity to commit the crime. We also note that this was a bench trial, and so the potential for confusion on the part of the trier of fact as to the probative value of the opening statement is much lower. Thus the petitioner does not show a likelihood that any relief requested based on the opening statement would have been granted, and so cannot satisfy either prong of *Strickland* under this claim. Accordingly, he shows no error to the state court's ruling and no right to federal habeas relief.

### b. *Failure to impeach victim's credibility*

The petitioner next complains that trial counsel was ineffective for failing to impeach the victim based on her prior inconsistent statements.

As we noted *supra*, the defense did impeach the victim's credibility in several respects by eliciting testimony about prior conflicting statements about whether she bled following the attacks, the timeframe, and the date of the last attack. He did not, however, use the OCS worker's testimony to impeach the victim on her statement that she had never alleged that the petitioner had kicked in a door. *See* note 5, *supra*. However, his main complaint appears to be the manner in which trial counsel did elicit the denials from the victim – by asking her if she had ever told anyone, rather than a specific person, the statements he wished to use. He notes that the Louisiana Code of

Evidence requires that a witness's attention be "fairly directed" to a prior inconsistent statement and that she be "given the opportunity to admit the fact and [have] failed distinctly to do so" before extrinsic evidence of the statement might be used to impeach her credibility. *State v. Burbank*, 872 So.2d 1049, 1051 (La. 2004) (quoting LA. C. E. art. 613).

This argument does not show deficient performance by counsel. The victim testified first, and in no event did trial counsel's broad way of asking her about prior statements bar defense counsel from asking subsequent witnesses about those statements. As for trial counsel's failure to impeach the victim based on her statement to OCS that the petitioner had kicked in a door, we have noted above that trial counsel asked the victim about this statement but then neglected to raise the subject when he examined the OCS worker. Doc. 18, att. 6, pp. 15, 66–68; *see* note 5, *supra*. However, evidence of McConnell having recorded such a statement from the victim appears in the OCS interview summary. Doc. 21, att. 12, p. 86. Thus trial counsel's failure to bring up the statement with McConnell appears to be human error. Still, he did show prior inconsistent statements from the victim in other areas, as described above.

A single omission is insufficient to show that defense counsel performed in an objectively unreasonable manner, much less that inclusion of one more inconsistent statement from an interview two years ago would have been the final straw on the factfinder's assessment of the victim's credibility. Accordingly, the petitioner shows no error to the state court's ruling and no right to federal habeas relief under this claim.

### c. *Failure to obtain exculpatory documents from OCS*

The next alleged deficiency relates to trial counsel's failure to obtain records from a March 2009 OCS investigation.

The June 2009 OCS investigation relating to the sexual assault included statements from the victim, her grandmother, and her brothers that the petitioner was physically abusive to the children. Doc. 21, att. 12, pp. 86–88. The petitioner contends that OCS investigated him for physically abusing the children in March 2009 and cleared him of the charges. He states that the trial court barred all references to physical abuse allegations at trial, but maintains that introduction of the March 2009 report would have shown that the children had made false allegations against him before and therefore cast their current statements into doubt. However, he does not provide any evidence of this March 2009 investigation or report and so we have no basis for accepting his self-serving allegation that he was cleared of those charges. His documentation from OCS and the Abbeville police department's June 2009 investigation likewise makes no mention of a prior abuse investigation. *See* doc. 21, att. 12, pp. 85–101. Therefore he has not made a sufficient showing to satisfy either of *Strickland*'s prongs and shows no error to the state court's ruling on this claim.

### d.  Failure to call witnesses

The petitioner complains that trial counsel issued subpoenas to the petitioner's brother, Michael Romero, and Amanda Duhon (whom the petitioner describes as Romero's common law wife), but did not call them as witnesses at trial. The petitioner wrote to trial counsel before the trial, providing a list of witnesses including Duhon and Romero. Doc. 21, att. 12, pp. 109–10. Trial counsel wrote to the clerk of court, requesting subpoenas for Duhon and Romero, among others, at the addresses provided by the petitioner. Doc. 18, att. 5, pp. 36–37. These subpoenas were issued by the trial court and served on Duhon and Romero through another member of their household. *See* doc. 21, att. 16, pp. 18–19. However, at trial the defense only called one witness, Katie McConnell. Doc. 18, att. 5, p. 95.

The petitioner now provides affidavits from Duhon and Romero, stating that they never received any notice to appear at trial. Doc. 21, att. 12, pp. 128–31. Both stated that they would have testified that they had stayed in the same home as the petitioner and victim between the end of April and beginning of May 2009 and witnessed no sign of abuse between the petitioner and any of the children, nor any opportunity for the petitioner to rape the victim. *Id.*

The petitioner's own evidence shows that, despite the potential relevance of Duhon and Romero's testimony, trial counsel rendered effective assistance in this matter. The fact that Duhon and Romero did not receive their subpoenas cannot reasonably be attributed to trial counsel's error.[9] Additionally, the petitioner does not allege that he made the specifics of their alleged testimony known to trial counsel so that it would have been reasonable for trial counsel to request a continuance or recess based on their failure to appear. Accordingly, he cannot satisfy *Strickland*'s first prong under this claim and so shows no error to the state court's ruling.

### e. Barring petitioner from testifying

The petitioner next alleges that trial counsel dissuaded him from testifying by assuring him that he would be acquitted due to inconsistencies in the victim's testimony, thereby failing to present an effective defense and depriving the petitioner of his constitutional right to testify on his own behalf.

A criminal defendant's right to testify on his own behalf is well established. *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001) (citing *Rock v. Arkansas*, 107 S.Ct. 2704, 2708 (1987)). When defense counsel, rather than the prosecutor or trial court, interferes with this right, the proper vehicle for such a claim is ineffective assistance of counsel. *Id.* (citing *United States v.*

---

[9] The petitioner also alleges that the other people on his witness list would have provided valuable testimony on his behalf. Once again, however, he does not show that failure to call these witnesses is attributable to trial counsel's error. Furthermore, in the case of his other witnesses, he provides no affidavits of the testimony they would have offered or whether they received a subpoena to begin with.

*Brown*, 217 F.3d 247, 258–59 (5th Cir. 2000)). "[W]hen the record is simply that the defendant knew of his right to testify and wanted to do so but counsel was opposed [and] defendant acquiesced in his lawyer's advice . . . the only inquiry is whether that advice was sound trial strategy." *United States v. Mullins*, 315 F.3d 449, 453–54 (5th Cir. 2002).

The petitioner contends:

> At the close of the State's case, it was obvious that trial counsel was not going to call any of Petitioner's witnesses, so he told [trial counsel] he wanted to testify. [Trial counsel] assured petitioner that he did not need to testify because the judge would not find him guilty based on the inconsistencies in the victim's testimony.

Doc. 1, att. 2, p. 35. The defense rested after calling its lone witness, Katie McConnell. Doc. 18, att. 6, p. 68.

Therefore the petitioner's claim here appears to be that trial counsel gave him flawed guidance, to which he acquiesced, on the advisability of taking the stand. "[T]he decision whether to put a Defendant on the stand is a 'judgment call' which should not easily be condemned with the benefit of hindsight." *United States v. Garcia*, 762 F.2d 1222, 1226 (5th Cir. 1985) (quoting *Hollenbeck v. Estelle*, 672 F.2d 451, 454 (5th Cir. 1982)). Sound strategic reasons for not calling a defendant to testify on his own behalf include fear that the defendant might perjure himself or that his criminal history will be used against him, as well as a general belief that the defendant will not stand up to cross-examination. *Kingery v. Dretke*, 2006 WL 1441925, *14 (S.D. Tex. May 23, 2006); *Lax v. Duckworth*, 751 F.Supp. 1273, 1279 (N.D. Ind. 1989); *Emery v. Johnson*, 940 F.Supp. 1046, 1064 (S.D. Tex. 1996).

No evidentiary hearing has been conducted on this claim, and so we have no statements from counsel explaining his trial strategy. However, the record does contain notice of the state's intention to introduce a confession or inculpatory statement, relating to a statement made by the

petitioner to OCS employee Amber Wilkinson on June 25, 2009.[10] Doc. 18, att. 5, p. 39. Furthermore, the discovery list filed in the trial court indicates that the petitioner had an eight-page rap sheet.[11] *Id.* at 29. Therefore, in spite of petitioner's self-serving contention that he would have provided convincing alternate explanations for all of the state's evidence and proven to be a more credible witness than the victim, the record amply supports trial counsel's reticence in putting him on the stand. The petitioner thus fails to satisfy either of *Strickland*'s prongs, showing no error in the state court's ruling and no right to federal habeas relief under this claim.

### f.   Cumulative prejudice

Finally, we examine all of the ineffective assistance claims above to determine whether the cumulative effect of any prejudice could satisfy *Strickland*'s second prong. In this case, the petitioner has failed to show a single instance of deficient performance in satisfaction of *Strickland* under any claim. Therefore there is no prejudice to be counted under *Strickland*, and so the cumulative effect of any prejudice is *nil*.

### 4.   Cumulative Error

In his last claim the petitioner urges us to consider the cumulative effect of all of his claims above in depriving him of due process and subjecting him to undue prejudice. However, the petitioner has shown no merit to any of his claims above and so cannot prevail upon a showing of cumulative effect. Thus there is no error to the state court's ruling on this claim and the petitioner is not entitled to federal habeas relief.

## IV.
## CONCLUSION

---

[10] The OCS investigation report shows that Wilkinson interviewed the petitioner on that date. Doc. 21, att. 12, pp. 89–90.

[11] The petitioner was born on October 11, 1989, making him nineteen years old when the rapes occurred and twenty-one at the time of trial. Doc. 18, att. 5, p. 27.

Based on the foregoing, **IT IS RECOMMENDED** that the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Chambers this 6th day of June, 2017.

KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE